MARTÍN O. DE LA ROSA, Petitioner, *v.* HON. BLANTON WINSHIP, ETC., ET AL., Respondent.

No. 296. Argued July 20, 1934.—Decided July 26, 1934.

*Guerra Mondragón & Soldevilla* for petitioner. *Benjamin J. Horton, Attorney General,* and *T. Torres Pérez, Assistant Attorney General* for respondents.

Mr. Justice Hutchison delivered the opinion of the Court.

Petitioner, in his first cause of action, challenges the power of the Governor to scale an item in an appropriation bill under the authority conferred upon him by Section 34 of the Organic Act. The pertinent portion of that section reads in English and in Spanish as follows:

". . . . If any bill presented to the governor contains several items of appropriation of money, he may object to one or more of such items, or any part or parts, portion or portions thereof, while approving of the other portion of the bill. In such case he shall append to the bill, at the time of signing it, a statement of the items, parts or portions thereof to which he objects, and the appropriation so objected to shall not take effect."

". . . Si cualquier proyecto de ley presentado al Gobernador contuviere varias partidas de dinero, podrá él hacer objeciones a una o más de dichas partidas, o a cualquiera parte o partes, porción o porciones de las mismas, no obstante aprobar la otra porción del proyecto. En tal caso él agregará al proyecto de ley, en el momento de firmarlo, una relación de las partidas, partes o porciones de ellas a las que se opone, y la asignación objeto de esos reparos no tendrá validez."

Petitioner does not question the meaning of the Spanish version but says that it is a bad translation. The contention is that "thereof" refers to the "bill" mentioned in the first part of the sentence, not to the "items" subsequently twice mentioned in the same sentence and in the context immediately preceding the word "thereof". Hence, petitioner insists that in Spanish version *"porciones de las mismas"* should be amended to read *"porciones del mismo"* (*el proyecto*). No rule of grammatical construction is cited in support of this view. When the meaning of words used in a statute is perfectly plain, effect should be given to that meaning even under the rule of strict construction which, where a grant of power is involved, is applicable only in case of doubt as to what the legislature intended. When Congress said that the Governor "may object to one or more of such items, or any part or parts, portion or portions thereof" it

meant, we think, that "he may object to one or more of such items, or any part or parts, portion or portions" of such items.

We need not discuss the cases relied on by petitioner. A comparison of the paragraph above quoted from our Organic Act with the various constitutional provisions involved in those cases will suffice to distinguish them. In none of those cases was the court dealing with a constitutional provision which in plain terms authorized disapproval of any part or portion of an item as well as disapproval of the item. For the purpose of this opinion it may be freely conceded that a grant of authority to disapprove of any item or items, without more, cannot be enlarged by construction into a grant of power to disapprove any part or portion of such item or items. That is the gist of what has been decided by most, if not all, of the cases relied on by petitioner. From some of the more efusive opinions it may be inferred that certain courts might have questioned the wisdom of such a provision as Congress saw fit to embody in our Organic Act. We find nothing in any of the cases cited by petitioner that militates against the conclusion reached by us as to the meaning of that provision.

In a note to *Commonwealth Ex rel Elkin* v. *Barnett*, 55 L.R.A. 882, at page 883 may be found a list of the various constitutional provisions in the different states. At page 885 the result is given as follows:

"From the above it will be seen that in Alabama, Arkansas, Louisiana, Colorado, Maryland, Montana, Nebraska, Pennsylvania, and South Dakota the governor has power to veto 'any item or items.' In Minnesota, New Jersey, New York, Texas and Utah he has the power to veto 'one or more of such items.' In Missouri, California, and Washington he has the power to veto 'one or more items.' In North Dakota he may veto 'any item or items, or part or parts of any bill making appropriations.' In Illinois the bill must be 'in distinct items and sections,' and provides for the governor's disapproval if he shall not approve 'any one or more of the items or sections.' In West Virginia he may veto 'any item

or appropriation therein.' In Kentucky he may veto 'any part or parts' 'embracing distinct items.' In Mississippi he may disapprove 'parts of any appropriation bill.' ''

"A strict construction of the provisions above would seem to indicate," says the editor of the note, "that, except in North Dakota and Mississippi, the power of the governor is limited to striking out 'an item' '' We need not go so far as this. Even in the case of North Dakota, it may be conceded that the language of the constitutional provision leaves some room for doubt and is open to construction. The wording of our Organic Act is much more explicit. Congress was aware of the stereotyped phraseology of the state constitutions and of the interpretation placed thereon by the state courts. Instead of following any of these precedents it elected to establish an unmistakable innovation and in its choice of words left but little to the imagination.

Appended to the case of *Peebly* v. *Childers,* as published in Volume II, Book I of "Cases on Constitutional Government" by Edwin F. Albertsworth is an extract from a paper by Alison Reppy, entitled "The Power of the Executive to Split an Item of an Appropriation Bill", 4 Tex. Law Rev. 182, at pp. 204, 205, 206, from which we quote:

"The courts have advanced several reasons why the power to split an item of an appropriation bill should not be conferred upon the Governor. Thus, for example, it has been suggested that to confer such power would turn the Governor's veto power into a creative power, violate the doctrine of the separation of powers, and allow the executive to determine the amount to be appropriated, limited only by the maximum set by the Legislature. . . . . This objection is not serious and might be answered by saying that there could be no violation, because the Governor, when vetoing a bill, is acting as a part of the Legislative machinery. Another objection is that the liberties of the people might be endangered. . . . But those objections seem more apparent than real . . . The real problem is whether as a matter of sound governmental policy, the Governor should be given the power to split an item of an appropriation bill. Aside from constitutional provisions, the writer submits that there is no rule of law which will govern the solution of this problem;

that it is rather a question of the science of government. In making this decisions the real issue will be: Which type of provision will be the most workable, the type limiting the veto power to particular items, or the type extending it to parts of items?''

We might question on other grounds the soundness of the argument which concedes that the elimination of an item is merely destructive, not ''creative'', legislation and at the same time insists that a reduction in the amount of an item is ''creative legislation''; but however this may be, we have no more doubt as to the power of Congress to confer upon the Governor of Puerto Rico the authority to veto an item in part, than we have as to what was intended by the provision that ''he may object to one or more of such items, or any part or parts, portion or portions thereof.''

Petitioner alleges in substance, as a second cause of action: that he is a member of the Classified Civil Service; that his position is covered by the provisions of Section 6 of Law number 87 of 1931; that the Legislature in the budget for 1934–35 appropriated as a salary for that position the sum of $3,325.00; that the Governor in connivance with the co-defendant, E. Garrido Morales, reduced this salary to $2,400; that this reduction has placed petitioner's salary almost on a level with that of the Chief of the Division of Plumbing, which amounts to $2,280; and is tantamount to the arbitrary abolition of petitioner's position, and is therefore null, in excess of the executive authority, contrary to the Civil Service Law and void, for the following reasons:

''(a) Because the Governor of Puerto Rico lacks authority to reduce the salary of your petitioner;

''(b) Because even if he has such authority he can and must exercise it only with the best good faith, without infringing rights acquired by the petitioner under the Civil Service Act;

''(c) Because the reduction in the salary of your petitioner is so great that it amounts to a suppresion of the office, and such office was not abolished by the Legislature of Puerto Rico;

''(d) Because the reduction in the salary of your petitioner has placed said position on the same level as those of plumbing in-

spectors and similar subordinate employees of the department without degrees, and therefore it cannot be expected that the same will be discharged with the required efficiency;

"(e) Because the aforesaid reduction in the salary of your petitioner is not in pursuance of any plan to effect economies and still less for improving the service, but simply, solely and merely for the purpose of punishing, humiliating and vexing your petitioner, thus forcing him to resign his position."

This is followed by an averment, on information and belief, to the effect that the action of the Governor was due entirely to a preconceived plan of the said E. Garrido Morales to eliminate from his department all members of the political party to which petitioner belongs, as had been done in numerous recent instances,—a preconceived plan which he induced the Governor to adopt and which the Governor seconded in the instant case either by direct connivance or passive nonresistance, confiding in the advice and suggestions of the said E. Garrido Morales.

In support of this second cause of action petitioner quotes from an opinion by Mr. Justice Peckham in 123 N.Y. 173, 25 N.E. 274, wherein he points out the purpose of the Civil Service Laws, the evils intended to be remedied, and certain differences between the old system and the new in the matter of appointment to, or tenure of office. The only other authority cited is *De Merritt* v. *Weldom*, 154 Cal. 545. The doctrine of that case is summarized in the headnotes as follows:

"Under the provision of section 855 of the General Municipal Corporation Act, the board of trustees of Ukiah City, a municipal corporation of the sixth class, has the absolute right to fix the compensation of the marshal at any sum it deems proper, free from supervision or review on the part of the courts, subject to the limitation that it may not effectually provide that there shall be no compensation at all, nor practically destroy the office by fixing the compensation at so low a figure that no one would discharge the duties of the office for the compensation fixed. Such a provision by the trustees would conflict with the act of the legislature, and therefore would be void.

"Where a statute of the state requires a municipal legislative body to fix the compensation of a municipal officer, the question of what is a reasonable compensation is addressed solely to it, and not to the courts, and however much a court may disagree with the conclusion of the legislative body that a designated sum is reasonable, it may not interfere, in the absence of fraud or bad faith. The courts refuse to consider legislative motives except as they may be disclosed on the face of the acts or are inferable from their operation and effect, considered in the light of those matters of which judicial notice may be taken.

"For the performance of only such duties as are imposed upon the marshal by .section 880 of the General Municipal Corporation Act, a compensation of ten dollars a month, fixed by ordinance of the board of trustees of Ukiah City, a town of about 1,800 inhabitants cannot be held by the courts to be so inadequate as to be tantamount to the destruction of the office of marshal, in that no competent person would perform the duties for such an amount." ·

Petitioner is director and resident physician of a hospital for contagious diseases, and visiting physician of the Leper Colony. There might be some difficulty in finding a physician of his experience and professional standing who would accept an appointment to the position in question at a salary of $2,400. We cannot assume with petitioner, however, that a competent man could not be found.

The petition must be denied.